IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EDWARD CARREON, Jr. (#M-35979),   )
                                  )
              Plaintiff,          )
                                  )
      v.                          )   Case No. 12 C 0928
                                  )
                                  )   Judge Rebecca R. Pallmeyer
TODD RAMOS and TOM DART,          )
                                  )
              Defendant.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Edward Carreon, an Illinois prisoner currently confined at Stateville Correctional Center, brought this action under 42 U.S.C. § 1983 against Cook County Deputy Sheriff Todd Ramos. Carreon alleges that as a result of Defendant Ramos's deliberate indifference and failure to protect him, Carreon was attacked by other prisoners on December 1, 2011. Defendant Ramos has moved for summary judgment [30]. Plaintiff Carreon submitted materials in opposition to the summary judgment motion [35, 36, 37], but also asserted that he lacked information necessary to respond to it. The court invited Plaintiff to proceed with additional discovery, however, and he has declined to do so.

Defendant seeks summary judgment on two bases: that Plaintiff failed to exhaust his administrative remedies, and that Plaintiff cannot establish that Officer Ramos was deliberately indifferent to a known risk of harm. For the reasons stated herein, the court concludes that summary judgment is appropriate.

## DISCUSSION

The standards that govern this motion are familiar. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). In considering a motion for summary judgment, this court construes the facts and

draws all reasonable inferences in favor of the non-movant, *Jajeh*, 678 F.3d at 566, but where the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the nonmoving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010).

Consistent with this court's local rules, in support of his motion, Defendant filed a Local Rule 56.1(a)(3) Statement of Material Facts [32], citing evidentiary material in support of each statement. Defendant also filed and serve the appropriate notice to *pro se* litigants [32], explaining the requirements of Local Rule 56.1. Plaintiff did respond in writing to the summary judgment motion [37] and to Defendant's Local Rule 56.1(a)(3) statement [36]; he did not submit a Local Rule 56.1(b)(3)(C) statement of additional facts and did not, in all instances, cite portions of the record in support of his denials of Defendant's statements. *See* N.D. ILL. L.R. 56. 1 (b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012). The court construes his submissions, and the record evidence, in the light most favorable to Plaintiff.

Viewed under these standards, the record supports the following findings:

Edward Carreon was, at the time of the incident at issue here, a pretrial detainee at the Cook County Department of Corrections ("CCDOC"). (Def. Statement of Facts [32] ¶ 1.) Defendant Todd Ramos is and was employed by the Cook County Sheriff in Court Services. (*Id.* ¶ 2.) On December 1, 2011, the day that Plaintiff entered Cook County Jail as a pretrial detainee, Todd Ramos was working as a Court Services Deputy Sheriff for Courtroom 101 at the Cook County Criminal Courthouse located at 26th and California. (*Id.* ¶ 5, 6.) On that day, Plaintiff was brought to bond court and placed in a holding cell prior to his bond appearance. (*Id.* ¶ 6.) The holding cell

does not have windows, and the ten to fifteen detainees confined inside the cell could be seen only by way of cameras. (*Id.* ¶ 7.) Plaintiff did not know any of the detainees in his holding cell. He did not speak to or have any interaction with the other detainees prior to his bond hearing, nor did any other inmates speak to or threaten him prior to his bond hearing. (*Id.* ¶ 8.)

Officer Ramos escorted Plaintiff from the holding cell to his bond hearing in Courtroom 101. (*Id.* ¶ 9.) Plaintiff, who admits he had "no reason whatsoever" to be afraid of the other inmates, did not say anything to Officer Ramos prior to his bond hearing. (*Id.* ¶ 10, citing Carreon Dep., Exh. A to Def. Statement of Facts [32-1], at 46.)

At the hearing, the State's Attorney presented the allegations against Plaintiff, describing the factual details of the crimes alleged. (Def. Statement of Facts ¶ 11.) Plaintiff does not know what, if anything, could be heard by detainees in the holding cell concerning the bond hearing, (*Id.* ¶ 12.) After the hearing, Officer Ramos escorted Plaintiff from Courtroom 101 back to the holding cell. (*Id.* ¶ 14.) While being transported back to the holding cell, Plaintiff did not disclose any safety concerns or threats to Officer Ramos. (*Id.* ¶ 15.) In fact, Plaintiff recalls that he "was more scared of the judge than [he] was of anything [else]." (*Id.* ¶ 13; Carreon Dep. at 32.) Plaintiff contends that Defendant Ramos told him while escorting him back to the holding cell that detainees who, like Plaintiff, are charged with some kind of aggravated sexual assault, are often attacked by other inmates. (See Plaintiff's Local Rule 56.1(a)(3) Statement [36] (hereinafter, "Plaintiff's Response") ¶ 5.)

After Ramos returned Plaintiff to the holding cell, Plaintiff sat down on a bench, and Ramos returned to a desk where there is a screen showing a closed-circuit video feed of the holding cell. (Def. Statement of Facts ¶¶ 16, 17; Ramos Aff., Exhibit D to Def. Statement of Facts [32-4], ¶ 6.) Within a minute and a half of Plaintiff's entering the cell, as he was seated and looking down at the bench, another inmate approached him and punched him. (Carreon Dep. at 49, 50.) Plaintiff

testified that the other inmate punched him "on the side of my face," (Carreon Dep. at 50), but he now states that he was struck in his lower right rib cage. (Plaintiff's Response ¶ 18.)

Upon seeing detainee Mark Russell punch Plaintiff on the video feed, Defendant Ramos immediately radioed a "10-10" alert, asking for additional officers to respond to a fight among detainees. (Def. Statement of Facts ¶ 19.) Defendant Ramos then went directly to the holding cell and opened the door but, consistent with jail safety procedures, did not fully enter the cell by himself, as the door would have closed and locked behind him. (*Id.*) After the initial punch, three or four other inmates jumped on Plaintiff and began kicking and punching him. (Carreon Dep. at 51-52.) Plaintiff was knocked to the ground and held there; he made unsuccessful efforts to protect himself by grabbing one detainee's Department of Corrections uniform and attempting, in his weakened condition, to wrap his arms around his assailant's neck. (*Id.* at 76, 77.)

As he stood in the doorway, Defendant Ramos observed Plaintiff and detainee Mark Russell on the ground, wrestling. (Def. Statement of Facts ¶ 21.) Ramos kept the door open and, when the detainees came within arm's reach of the doorway and other officers had responded, Ramos pulled Plaintiff by his shirt away from the fight. (*Id.* ¶¶ 21, 22.) Though Plaintiff is uncertain about how long the inmates were beating him, he estimates that the assault lasted five to six minutes. (Def. Statement of Facts ¶ 22; Plaintiff's Response ¶ 22; Carreon Dep. at 55-56.) Defendant Ramos contends that he pulled Plaintiff out of the fight within two minutes of first observing the incident on the closed circuit feed. (Def. Statement of Facts ¶ 22; Ramos Aff. ¶ 10.)

After the incident ended, Officer Ramos asked Plaintiff if he wanted to press charges against Inmate Russell. (Def. Statement of Facts ¶ 23.) Officer Ramos was not aggressive towards Plaintiff in any way. *Id.* Both Plaintiff and Inmate Russell signed forms declining to press charges against one another, and both checked lines on the form that identified, as reasons for refusing to press charges, the facts that the parties were "mutual combatants" and that the "fight [was] broken up immediately." (Def. Statement of Facts ¶ 24.; Ramos Aff. ¶ 11.) Plaintiff denies this, but he cites

no evidence to rebut the forms, copies of which are in the record. (Complaint Refusal on Victim's Request, Exhibits E and K to Carreon Dep.)

Within approximately two minutes of Plaintiff's being pulled from the holding cell, paramedics were on their way to the Jail, and Plaintiff was transported to St. Anthony's Hospital via ambulance. (Def. Statement of Facts ¶ 25.) Doctors performed CAT scans and authorized Plaintiff's return to the Jail that same day. (*Id.* ¶ 26.) They prescribed no further treatment for Plaintiff's cuts, bruises, and swelling to his left eye, and assured Plaintiff that the blurry vision he was experiencing would resolve when the swelling eased. (*Id.*; Plaintiff's Response ¶ 26.) Plaintiff received a copy of Cook County Jail's rules and regulations and is familiar with the grievance procedure. (Def. Statement of Facts ¶ 27; Carreon Dep. at 99.) Plaintiff submitted a grievance concerning the December 1, 2011 incident on February 21, 2012 (Def. Statement of Facts ¶ 28, Cook County Sheriff's Office Inmate Grievance Form, Exhibit J to Carreon Dep.); though he now asserts the February 21 document was an appeal, he testified that the February 21 submission "was the first grievance [he] filed." (*Compare* Plaintiff's Response ¶ 28 *with* Carreon Dep. at 102.) Plaintiff's complaint in this case was initially dated January 13, 2012, and filed on February 9, 2012. (*Id.* ¶ 3.) Plaintiff wrote two additional grievances for the same incident, which were ultimately treated as requests for updates on the original February 21, 2012, grievance. (See Def. Statement of Facts ¶ 29.)

## DISCUSSION

As noted, Defendant seeks summary judgment on two grounds: Defendant contends that Plaintiff did not exhaust administrative remedies before filing this lawsuit. In the alternative, Defendant argues that the undisputed facts establish that there was no deliberate indifference in this case. As explained below, both arguments have merit.

A.  **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1996 establishes a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison

5

conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Booth v. Churner*, 206 F.3d 289, 293-94 (3rd Cir. 2000). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim" under Section 1983. *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450-52 (7th Cir. 2001) (exhaustion requirement applies to claim that prisoner was assaulted by guards). The purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before a federal suit is initiated. *See Porter v. Nussle,* 534 U.S. 516, 524-25 (2002).

In this case, Plaintiff entered the jail on the same day as the incident underlying this suit. He testified that he understood the grievance process, and he in fact did file a grievance regarding the incident underlying this suit on February 21, 2012. The record shows, as well,, that Plaintiff prepared his complaint more than a month prior to initiating, let alone completing, the grievance process at the jail. He actually filed the original complaint in this case twelve days prior to submitting the grievance.

The court acknowledges that in response to Defendant's motion for summary judgment, Plaintiff complained that he had not had the opportunity to collect evidence necessary to rebut Defendant's failure-to-exhaust argument. He also suggested that the transcript of his deposition was somehow inaccurate. Out of an abundance of caution, the court twice granted Plaintiff additional time to conduct discovery and to respond to Defendant's motion, but he has submitted nothing further. A motion for summary judgment "requires the responding party to come forward with the evidence that it has--it is the 'put up or shut up' moment in a lawsuit." *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011) (citations omitted). Plaintiff has not rebutted Defendant's

6

showing that he failed to exhaust his administrative remedies prior to initiating this lawsuit. Defendant is entitled to summary judgment on this basis.

### B. Plaintiff Cannot Establish Deliberate Indifference

Even if Plaintiff had exhausted his administrative remedies prior to filing suit, Defendant Ramos would be entitled to prevail on this motion because there are no disputes of fact concerning Plaintiff's claim that Defendant Ramos subjected him to deliberate indifference to a substantial risk of serious harm. The Eighth Amendment, as applied to the various states through the Fourteenth Amendment, requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted). "While prison officials have a duty to protect inmates from violence at the hands of other inmates, not every injury within a prison is an Eighth Amendment violation." *Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002); *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006) (defendant prison officials entitled to summary judgment where plaintiff did not present evidence that they responded unreasonably to the risk of harm).

Because Plaintiff was a pretrial detainee at the time of his injuries, his § 1983 claim is analyzed under the Due Process Clause of the Fourteenth Amendment. *See Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002). The Eighth Amendment deliberate indifference standard nevertheless applies with equal force in cases involving pre-trial detainees. *Estate of Cole v. Fromm*, 94 F.3d 254, 259 (7th Cir. 1996); *Salazar v. City of Chi.*, 940 F.2d 233, 237-41 (7th Cir. 1991). To prove a failure to protect claim under this standard, a plaintiff must establish (1) that he faced a substantial risk of serious injury, and (2) that the defendant acted with deliberate indifference to that risk. *Farmer*, 511 U.S. at 834; *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). Mere negligence is insufficient. *Farmer*, 511 U.S. at 835. The officer must have actually known of a substantial risk of harm to the plaintiff's safety, yet failed to take appropriate steps to protect him from the specific danger. *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008).

In other words, knowledge of only a general risk of violence is insufficient. *Id.*; *Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005); *Brown*, 398 F.3d at 909. Instead, a failure-to-protect claim usually requires proof that the officer knew of a risk of violence specific to the inmate.

There is no evidence that Defendant Ramos was aware of a risk to Plaintiff. Ramos escorted Plaintiff to and from the holding cell before and after his bond hearing. Plaintiff said nothing to Ramos prior to the bond hearing. Plaintiff had no interaction with fellow detainees prior to his hearing, did not know any of the other detainees in the holding cell, did not talk to any of them, and did not hear or communicate threats from any of them. It is undisputed that Plaintiff never told Defendant Ramos that he was in fear for his safety, that he had been threatened, or that he believed he would be attacked. Instead, according to Plaintiff's version of events, it was Ramos who warned Plaintiff that detainees often attack inmates facing charges of aggravated sexual assault. Assuming that Ramos was aware of the charges Plaintiff was facing, there is no evidence that he communicated that information to anyone else in the holding cell, nor that any other detainee heard the proceedings at the Plaintiff's bond hearing. The mere fact that Plaintiff was placed in a holding cell with other inmates not charged with sex offenses is insufficient to establish deliberate indifference. *See Wyatt v. Hollingsworth*, Case No. 09 C 018, 2009 WL 2177313, *2 (S.D. Ill. July 22, 2009) (Reagan, J.) Plaintiff himself was unaware that he was at risk; he did not ask for protective custody, nor did he identify specific prisoners whom he believed wish to do him harm. Based on the evidence in the record, no reasonable jury could find that Defendant Ramos was on sufficient notice of a substantial risk of serious harm to Plaintiff. *See Fisher*, 414 F.3d at 664 (where prisoner himself was surprised by assault at the hands of another inmate, "it is safe to say that [defendant officer] was also surprised" and was therefore entitled to summary judgment); *Butera*, 285 F.3d at 607 (defendant officials who were unaware of a detainee's suicidal tendencies were not on notice of a substantial risk of harm and entitled to summary judgment).

Any suggestion that Defendant Ramos violated Plaintiff's rights by failing to intervene once the fight began would also fail. A correctional officer is not required to take an unreasonable risk to his or her own safety in order to break up an inmate fight.. *See Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007); *Peate v. McCann*, 294 F.3d 879, 883 (8th Cir. 2002). In *Guzman*, 495 F.3d at 858, when a jail fight broke out, the defendant officer made a call for back up and then left her post, looking for additional staff. She did not take the additional step of using verbal commands to the inmates, but the Seventh Circuit observed that this apparent deviation from standard procedure could not be characterized as deliberate indifference.

In this case, similarly, there is no basis for a conclusion that Ramos was negligent, let alone deliberately indifferent. After returning Plaintiff to the holding cell, Ramos returned to his post, where a closed circuit video provides the only method for viewing the activity in the cell. By Plaintiff's own account, a minute or two after he was seated on a bench in the holding cell, another detainee, Mark Russell, punched him, either in the face, in the ribs, or both. As soon as Defendant Ramos became aware of the fight, he called a "10-10" on his radio, requesting back-up, and then proceeded to open the door of the cell. Adhering to jail policy, Officer Ramos stood at the open door, but because he was alone, he did not enter. As soon as Plaintiff was close enough to him, however, Defendant Ramos pulled Plaintiff out of the cell in an effort to end the fight. The parties differ as to the length of time it took for Defendant Ramos to pull Plaintiff from the cell—Defendant Ramos estimates the time at two minutes, while Plaintiff believes it was closer to five or six minutes—but it appears undisputed that he pulled Plaintiff from the altercation as soon as Plaintiff was within arms' reach of the open cell door. Then, within two minutes of Plaintiff's being pulled from the cell, paramedics were on their way, and Plaintiff was transported to the hospital. Defendant Ramos gave Plaintiff the opportunity to press charges against Detainee Russell and he declined, signing a form that stated that he and Russell were "mutual combatants" and that the fight was broken up immediately.

Plaintiff never told Defendant Ramos that he was in fear for his safety, that he had been threatened, or that he believed he would be attacked. Plaintiff merely asserts that persons charged with sex offenses are often subject to inmate-on-inmate violence. At the time of the incident, however, neither Ramos nor Plaintiff himself had any apparent reason to believe the other inmates were aware of the charges against Plaintiff. Plaintiff did not ask for protective custody, nor did he ever identify specific prisoners whom he believed wish to do him harm. On this record, no reasonable jury could find that Defendant Ramos was on sufficient notice of a substantial risk of serious harm to Plaintiff, or that his actions during or after the fight were in any way deliberately indifferent.

## **CONCLUSION**

Defendant Ramos' motion for summary judgment [#30] is granted. To the extent Plaintiff's response [#35] was intended as a motion, it is denied. The court enters judgment in favor of Defendant and dismisses the complaint. As Defendant Dart was named only for purposes of identifying the jail official involved in the alleged violations of Plaintiff's rights, the case is dismissed as against Defendant Dart, as well.

ENTER:

Dated: January 7, 2014

_____
REBECCA R. PALLMEYER
United States District Judge